UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-80150-CR-CANNON

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.

LINDFORD NORDLI McFARLANE,

                    Defendant.
_____/

## STIPULATED STATEMENT OF FACTS

**A.**    **Elements of Offense**

Were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt as to Counts 1 and 3 of the Information: Which, in Count 1 charges the defendant with the Knowing Possession of a Firearm and Ammunition by an Illegal Alien, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8):

First:    That the defendant knowingly possessed the firearm and ammunition referenced in the Information, in or affecting interstate or foreign commerce, as charged; and

Second:    That the defendant knew he was an alien illegally and unlawfully in the United States.

    The term "interstate or foreign commerce" includes any commerce between any place in a State and any place outside of that State. It is not necessary for the government to prove that the defendant knew that the firearm had moved in interstate or foreign commerce before the defendant possessed it, only that it had made such movement.

As to Count 3 of the Information, which charges the defendant with Aggravated

Identity Theft in violation of Title 18, United States Code, Section 1028A:

First:     The defendant knowingly possessed, or used another person's means of identification;

Second:    Without lawful authority; and

Third:     Based on the facts set forth below, did possess and use another person's means of identification during and in relation to the eligible felony alleged in the Information (that is, the felony violation of Title 18, United States Code, Section 922(a)(6) alleged in Count 2 of the Information)

A "means of identification" is any name or number used, alone or together with any other information, to identify a specific person, including a name, social security number, date of birth, officially issued driver's license or identification number, alien registration number, passport number, employer or taxpayer identification number, or electronic identification number or routing code. The Government must prove that the Defendant knew that the means of identification, in fact, belonged to another actual person, living or dead, and not a fictitious person.

### B. Statement of Facts

Had this matter proceeded to trial, the United States would prove the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offense of conviction referenced above, and in Paragraph 1 of the Plea Agreement:

1. A custodian of records of the U.S. Department of Homeland Security, Customs and Border Protection (CBP), would introduce certified records of the defendant's Alien file ("A-File"), as well as certified records obtained from the Government of Jamaica through a mutual legal assistance request (MLAT), which would establish that all times material to the case, that Linford Nordli McFARLANE, DOB-08/1981, is and was a citizen and national of Jamaica.

2

2.      According to CBP records, defendant McFARLANE entered and was lawfully admitted into the U.S. several times between 1989 and 2001. On each occasion defendant McFARLANE was issued an I-94 Visa with a clear admission expiration date (the date by which defendant McFARLANE was required depart the U.S.). Said records would establish that on five (5) prior occasions, defendant McFARLANE legally entered and departed the United States within the time parameters set forth in his visa, thus demonstrating his knowledge of such.

3.      Based on CBP records, McFARLANE last entered the United States on January 31, 2001, on a B2 tourist visa and was authorized to remain in the United States only until June 11, 2001.  There is no record of his departure since that entry, and the CBP custodian would testify that on the basis of the foregoing, that the defendant has knowledge that he was illegally and unlawfully present in the United States as a visa overstay at all times material hereto, particularly in view of his fraudulently obtaining U.S. Identification in the name of U.S. Citizen persons thereafter, as further explained below.

4.      Officer Matthew Odell of the West Palm Beach Police Department (WPBPD) would testify that on Thursday September 1, 2022, he and WPBPD Officer Borgan attempted to conduct a traffic stop of a black Mercedes bearing FL Tag# B6KWX traveling westbound in the 2900-block of 45th Street of the City of West Palm Beach, Palm Beach County, Southern District of Florida, after both officers having observed a window tint violation. After the officers activated their overhead emergency lights and siren, the Mercedes failed to stop for the traffic stop and immediately began to flee from the officers. Due to the reckless driving behavior exhibited by the fleeing driver, the

officers were compelled to terminate pursuit, deactivated their emergency lights, and followed the vehicle from a distance.

5. The fleeing black Mercedes was finally observed coming to a complete stop in the eastbound lanes of 45th Street in the vicinity of 2995 45th Street, West Palm Beach, Palm Beach County, Southern District of Florida, after it struck a curb, destroying the entire front passenger tire rim, flattening the vehicle's tire and rendering the vehicle disabled, after which the driver exited the vehicle and took flight on foot heading toward/in the vicinity of 45th Street. Officer Odell immediately gave chase and subsequently detained the driver, later identified as the defendant Linford McFARLANE in the vicinity of the Harley Davidson dealership located at 2955 45th Street, West Palm Beach, Florida, in the Southern District of Florida. A search incident to arrest of the driver and vehicle located a state-issued Florida Driver's License bearing the photographic image of Lindford Nordli McFARLANE, the defendant in this case, but issued in the name of A.R., and seven (7) vacuumed heat-sealed bags in the trunk of the Mercedes, which subsequent PBSO laboratory analysis determined contained 2,583 grams of marijuana.

6. Officers canvasing the area of defendant McFARLANE's brief attempt to flee on foot located a black coach saddle bag in a ditch, approximately 10 to 15 yards away of the Mercedes. Inside the main compartment of the bag was a black Canik, Model TP9, 9mm semi-automatic pistol, serial # 21BC60698, and $1,761.25 in US currency. WPBPD Crime Scene Investigator (CSI) Eckroth would testify she subsequently determined the Canik Model TP9 pistol to be loaded with a magazine containing 10 rounds of PMC 9mm ammunition, 4 rounds of Remington-Peters 9mm ammunition, 4

rounds of Federal 9mm ammunition for a total of 18 rounds in the magazine, in addition to 1 Federal 9mm ammunition round recovered from the chamber of the pistol for a total of nineteen (19) rounds of 9mm ammunition. Defendant McFARLANE, under the alias of A.R., was issued three (3) separate citations for Side Windows/Sunscreen Restrictions, Fail to Obey a Traffic Device, and driving with a Suspended License.

7. The black Canik Model TP9 pistol recovered from the bag adjacent to defendant McFARLANE's vehicle was taken into evidence and subsequently swabbed by CSI Eckroth for the presence of DNA. Those swabs were thereafter submitted to the Palm Beach County Sheriff's Office (PBSO) Forensic Biology Unit for comparison to McFARLANE's known DNA standard which was obtained pursuant to a Florida state search warrant under his alias name A.R.

8. After forensic analysis, PBSO Forensic Scientist Kelly A. Behnke would testify that:

   a) The DNA profile obtained from the slide is approximately 3,000,000,000,000 times more likely (very strong support) if it originated from McFARLANE, a/k/a Alim RODWELL, and an unknown, unrelated individual than if the DNA profile obtained originated from two unknown, unrelated individuals.

   b) The DNA profile obtained from the trigger is approximately 50,000,000,000,000 times more likely (very strong support) if it originated from McFARLANE, a/k/a Alim RODWELL, and an unknown, unrelated individual than if the DNA profile obtained originated from two unknown, unrelated individuals.

9. WPBPD Certified Latent Print Examiner Crystal Grillo would testify that she compared the following sets of fingerprints:

  a. A certified copy of fingerprints taken from defendant McFARLANE by the Rochester Police Department on or about December 20, 2001 for an arrest under his real name;

  b. A certified copy of fingerprints from defendant McFARLANE, under the alias A.R., incident to his arrest by WPBPD on September 1, 2022;

  c. A certified copy of fingerprints from defendant McFARLANE's conviction, dated September 5, 2006, under the alias of A.R., in case number 062005CF016384A88810; and

  d. A certified copy of fingerprints from defendant McFARLANE's conviction, dated December 20, 2007, under the alias of A.R., in case number 502006CF010875AXXXMB.

Examiner Grillo would testify that after forensic comparison, she determined that all the fingerprints referenced above originated from the same individual, thus establishing the person arrested under the name A.R. on September 1, 2022 was, in fact, defendant McFARLANE.

  10. Through a subsequent ATF trace, agents determined that on May 29, 2022, defendant McFARLANE, used the alias R.J., to fraudulently purchase the Canik TP9, serial# 21BC60698, at the West Palm Beach Gun Show from Fields Auction Service Inc, a Federally Licensed Firearms Dealer (FFL), located in Palm Beach County, and the Southern District of Florida. In so doing, defendant McFARLANE provided a state-issued Florida driver's license in the name of R.J. as identification, wrote the Florida driver's license number that is assigned to the R.J. license, as well as R.J.'s date of birth and U.S. Social Security Account number, on the ATF Firearms Transaction Record Form 4473, in furtherance of the purchase of the aforementioned Canik pistol. Had the FFL been aware of these false material representations of identity, the FFL would testify he would not have consummated the sale of the firearm.

11. Representatives of the Florida Department of Law Enforcement (who conduct National Firearms Instant Checks in Florida to approval the sale of firearms) and Florida Department of State, Florida Department of Highway Safety and Motor Vehicles (FDHSMV) would testify that at all times material hereto, when a person applies for a Florida Driver's License, Learner's Permit or Identification card it is FDHSMV's protocol to check all information on the application (name, DOB, social security number) provided with the Social Security Administration database before approving the application. The information must match in order for FDHSMV to issue any form of identification. In other words, a person obtaining a Florida Driver's License – such as defendant McFARLANE – cannot simply make up a name and social security number (SSN) and obtain a Florida Driver's License. Rather, rather one must utilize a real person's name and correspondingly valid SSN. Since all of the instances in which defendant McFARLANE fraudulently obtained state-issued driver's licenses, specifically in the names of A.R., P.S. and R.J. such identifying information solely belonged to real persons, such demonstrated his knowledge that the R.J. identity and identifying information he used belonged to a real person.

12. Agents identified and interviewed the real R.J., who is a resident of the U.S. Virgin Islands. During his interview with law enforcement, R.J. denied ever purchasing a firearm and stated had never met and/or seen defendant McFARLANE prior to his interview. R.J. also advised he had never given anyone permission to use his name, date of birth, or social security number to create a false identity or purchase firearms.

13. Special Agent Mark Finnamore, who has previously been found qualified to

7

testify as an expert witness in the interstate commerce nexus of firearms and ammunition in the United States District Court for the Southern District of Florida, on at least six prior occasions, would testify that he examined the aforementioned Canik Model TP9 pistol bearing serial# 21BC60698, and its accompanying nineteen (19) rounds of assorted 9mm caliber ammunition, and that based on his training and experience, as well as the manufacturers' markings on said items, that: (a) the Canik pistol and ammunition were manufactured outside the state of Florida, and that therefore, of necessity, both the pistol and the ammunition traveled in interstate and/or foreign commerce prior to their possession by defendant McFARLANE; and (b) the firearm and ammunition met the

federal definitions of a "firearm" and "ammunition" under Title 18, United States Code, Sections 921(a)(3) and 921(a)(1)(A).

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: /s/ John C. McMillan
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

LINDFORD NORDLI McFARLANE
DEFENDANT

PETER BIRCH
SUPERVISORY ASSISTANT FEDERAL
PUBLIC DEFENDER
COUNSEL FOR DEFENDANT

Dated: 10/30/25
At West Palm Beach, Florida

9